# IN THE COURT OF COMMON PLEAS
## FRANKLIN COUNTY, OHIO

DAVID FULMER )  CASE NO.
63 Trail East )
Pataskala, OH 43062 )  JUDGE
)
       Plaintiff )
)  **COMPLAINT FOR DAMAGES**
)  **(Other Civil)**
   vs. )
)
DEREK MYERS )
1446 Mink Street )
Putaskala, OH 43062 )
)
   and )
)  **Jury Demand Endorsed Hereon**
MARK VAN BUREN )
4832 Keller Road )
Hebron, OH 43205 )
)
   and )
)
MICHAEL FOX )
11540 Broad Street SE )
Putaskala, OH 43062 )
)
   and )
)
RANDY FOOR )
159 Glen Crossing Drive )
Etna, OH 43062 )
)
   and )
)
BRIAN DENTON )
160 N. Fifth Street )
Kirkersville, OH 43033 )
)
   and )
)
CORNELIUS MCGRADY )
8675 Kingsley Drive )
Reynoldsburg, OH 43068 )
)

and                      )
                              )

TIMOTHY O. HICKIN      )
200 South Fork Circle      )
Pataskala, OH 43062      )
                              )

and                      )
                              )

ELIZABETH KRUGH      )
232 Rainbow      )
Sunbury, OH 43074      )
                              )

and                      )
                              )

RICHARD EMMONS      )
7630 Whitehall Drive      )
Dayton, OH 45459      )
                              )

and                      )
                              )

STEVEN LITTLE      )
10749 Eden Church Road, NE      )
St. Louisville, OH 43071      )
                              )

and                      )
                              )

WEST LICKING JOINT FIRE DISTRICT  )
851 E. Broad Street      )
Pataskala, OH 43062      )
                              )
                              )

       Defendants      )

Now comes David Fulmer and for his claims against the Defendants says:

## PARTIES

1.    Plaintiff David Fulmer is an individual who resides at 63 Trail East in Pataskala,

Ohio. At all times relevant to this Complaint, he was the duly appointed Fire Chief of the

2

Defendant West Licking Joint Fire District, and had been so appointed pursuant to R.C. §505.38 by the District Board of Trustees.

2.　　Defendant Derek Myers is an individual who resides at 1446 Mink Street in Putaskala, Ohio. At all times relevant to this Complaint, Myers was a member of the West Licking Joint Fire District Board of Trustees. He has served as president of that governmental entity. Myers is being sued in his official and individual capacities.

3.　　Defendant Mark Van Buren is an individual who resides at 4932 Keller Road, Hebron, Ohio. At all times relevant to this Complaint, Van Buren was a member of the West Licking Joint Fire District Board of Trustees. He has served as an officer of that governmental entity. Van Buren is being sued in his official and individual capacities.

4.　　Defendant Michael Fox is an individual who resides at 11540 Broad Street SE, Putaskala, Ohio. Fox was a member of the West Licking Joint Fire District Board of Trustees during Fulmer's first termination by the Board in 2012. Fox is being sued in his official and individual capacities.

5.　　Defendant Randy Foor is an individual who resides at 159 Glen Crossing Drive, Etna, Ohio. At all times relevant to this Complaint, Foor was a member of the West Licking Joint Fire District Board of Trustees. Foor is being sued in his official and individual capacities.

6.　　Defendant Brian Denton is an individual who resides at 160 N. Fifth Street, Kirkersville, Ohio. At all times relevant to this Complaint, Denton was a member of the West Licking Joint Fire District Board of Trustees. Denton is being sued in his official and individual capacities.

7.　　Defendant Cornelius McGrady is an individual who resides at 8675 Kingsley Drive in Reynoldsburg, Ohio. At all times relevant to this Complaint, McGrady was a member

3

of the West Licking Joint Fire District Board of Trustees. McGrady is being sued in his official and individual capacities.

8.     Defendant Timothy Hickin is an individual who resides at 200 South Fork Circle in Pataskala, Ohio. Hickin was a member of the West Licking Joint Fire District Board of Trustees during Fulmer's second termination proceeding which occurred in 2014. Hickin is being sued in his official and individual capacities.

9.     Defendant Elizabeth Krugh is an individual who resides at 232 Rainbow in Sunbury, Ohio. Krugh was an employee of the District in 2012 and actively participated in Fulmer's termination in that year.

10.     Defendant Richard Emmons is an individual who resides at 7630 Whitehall Drive in Dayton, Ohio. Emmons is a licensed investigator, in the State of Ohio who was retained by the West Licking Joint Fire District Board of Trustees. Emmons actively participated in Fulmer's termination of employment in 2012. Although not an "employee" of the District, the defendant acted as an agent of the Fire District and/or acted under color of law. The facts as set forth herein demonstrate that the defendant acted with the help of or in concert with District officials or acted as a willful joint participate with the District.

11.     Defendant Steve Little is an individual who resides at 10749 Eden Church Road, NE, in St. Louisville, Ohio. Little was appointed by the West Licking Fire District Board of Trustees to the position of interim administrative of the Fire District. Little actively participated in Fulmer's employment termination in 2014. Although not an "employee" of the District, the defendant acted as an agent of the Fire District and/or acted under color of law. The facts as set forth herein demonstrate that the defendant acted with the help of or in concert with District officials or acted as a willful joint participate with the District.

4

12.     Defendant The West Licking Joint Fire District is a joint fire district created pursuant R.C. §505.371 and is a separate political subdivision and taxing district under the Ohio Revised Code.  The District is governed by a Board of Trustees consisting of six members.

## VENUE AND JURISDICTION

13.     This Court has venue and jurisdiction pursuant to the Ohio Revised Code and the Ohio Rules of Civil Procedure as many of the acts or omissions giving rise to the allegations set forth in this complaint took place in Franklin County, Ohio.

## FACTS

14.     David Fulmer was hired as the Fire Chief of the West Licking Joint Fire District in 2009 after serving as Fire Chief for Miami Township [Montgomery County], Ohio. After he left his employment with Miami Township, he asked Miami Township to copy files from his department computer so that he could have the documents for future reference. Fulmer knew that some documents, such as operational policies he had previously drafted, would be relevant to his work at the District.  Fulmer also had materials that were associated with several professional organizations on his computer.  Miami Township complied with Mr. Fulmer's request.  A Microsoft PST file was provided to Mr. Fulmer on an external hard drive and/or CD as part of his request.

15.     The Microsoft Outlook PST files on Fulmer's Miami Township computer were copied to a single file.  The file contained approximately 78,000 e-mails.  Fulmer did not review the emails after they were provided.

16.     At some point, there was a problem with the external hard drive, which created a conflict with Fulmer's laptop. Because of these difficulties and to make the system more efficient, the District's own external IT provider Streamline Your IT, put the PST file on

5

Fulmer's desktop computer. There is no evidence that Fulmer himself put the PST file on his desktop computer. Fulmer knew the PST file was placed on his computer, and he occasionally used it to search for documents relating to his professional organizations or to obtain policies he had previously used in Miami Township. There was no policy or rule which prohibited Fulmer from having the documents on his District computer. At no time were any of the documents contained within the singular Miami Township file ever released to anyone. Fulmer maintained the security of those documents on his computer.

17.     Fulmer had a management style that was different than the previous chief's style. After his hire, he began implementing and correcting policies and procedures and held people accountable. Some of the changes overwhelmed not only the uniformed and non-uniformed personnel, but the Fire Board as well.

18.     However, the Fire Board was generally happy with the performance of Chief Fulmer.

19.     Some uniformed personnel (who are represented by the I.A.F.F. union) and administrative staff did not feel the same way. In fact, within a relatively short period of time, a segment of the union who was unhappy with the new policies spoke of seeking the removal of Fulmer from office.

20.     Likewise, Elizabeth Krugh, the District's Fiscal Officer and Fulmer's subordinate, had to adjust to his rules and procedures. By the end of 2011, Fulmer had drafted an evaluation critical of Krugh's interpersonal skills. This evaluation was provided to the Human Resources' Technician in February of 2012.

21.     That same month, the Board changed the hierarchy of the District to permit Krugh to report directly to the Board. Krugh then complained about a variety of issues, including issues

that had been previously addressed and approved by the Board. One of Krugh's greatest objections was the purchase of challenge coins by Fulmer, even though this purchase had been approved by the Board in December of 2011.

22.     Mr. Fulmer also initiated disciplinary proceedings against a secretary, Peggy Davis. Davis resigned during the disciplinary process. Subsequently, she sued the Fire District for her job back as well as for damages (Licking County Common Pleas Court Case No. 2011 CV 1410). While the lawsuit was pending, Davis discussed a possible settlement with Board members which would include her returning to work and the termination of Fulmer by the Board.

23.     The composition of the Fire District Board changed in January of 2012 when new members joined the Board.

24.     On January 12, 2012, an organizational meeting of the Fire District Board was held. Derek Myers was elected Board president and Randy Foor was elected vice president. During the course of this meeting, Board member Mark Van Buren asked the District's attorney, Marc Fishel, "how do we get rid of this guy?" (referring to Fulmer).

25.     At that time, Myers also wanted Fulmer fired even though there was not any evidence of wrongdoing on Fulmer's part.

26.     On March 30, 2012, the deposition of Derek Myers was taken in the John Davis public records litigation (Fifth Appellate District Case No. 12 CA 36). At the conclusion of the deposition, Davis' attorney accused Myers of making a statement, off the record, in which Myers contradicted his own deposition testimony. Attorney Wesley Fortune alleged that Myers stated, following the deposition and outside of the presence of his attorney, that he wanted Chief Fulmer terminated.

27.     On May 23, 2012, the West Licking Joint Fire District Board of Trustees held a special meeting. At that special meeting, the Board adjourned at 7:03 p.m. by unanimous vote to executive session to consider the appointment, employment, dismissal, discipline, promotion, demotion, or compensation of a public employee or official or the investigation of charges and complaints against the public employee or official.

28.     The Board voted to come out of executive session at 8:10 PM. The meeting was adjourned one minute later, at 8:11 PM, without any official action being taken by the Board of Trustees.

29.     The Ohio Revised Code and the rules and regulations of the District expressly require that employee disciplinary actions, including suspensions or administrative leaves, be acted on by the Fire Board.

30.     During the executive session, Board members Myers, Fox, Denton, McGrady, Foor and Van Buren were directed to place David Fulmer on administrative leave by the District's legal counsel, Marc Fishel. Fishel orchestrated the suspension of Fulmer in violation of District rules and the provisions of the Ohio Revised and Administrative Codes. The Board agreed to violate Fulmer's procedural due process rights by taking action without providing notice, conducting a hearing, public discussion or vote.

31.     Board member Doug Joseph did not receive his usual e-mail notification nor did he receive the usual reminder call by telephone advising him of the May 23 meeting. Elizabeth Krugh was responsible for notification to Joseph. Joseph believes that he was purposely excluded from the meeting.

32.     On May 30, 2012, Myers, Van Buren and Denton met Fulmer in his office at the Fire District Headquarters. Myers and Van Buren asked to speak to Fulmer in his office and

8

Denton spoke with Assistant Chief Ken Mathews. The Board members informed Fulmer that he was going to be placed on administrative leave. Fulmer asked about the nature of the allegations and the Board members refused to tell him. The Board members stated that they would accept Fulmer's resignation by the following Tuesday and would consider some form of severance package. After an additional inquiry, the Board members again refused to advise Fulmer as to what the allegations were against him. The Board members conveyed to Fulmer that nothing was in writing and that it was all done in executive session so as to not create a public record. The Board members then provided Fulmer with a memo dated May 18, 2012 which listed items to be completed and items to be turned in pending a major change in operation. At this point, no investigator had been appointed to investigate any alleged wrongdoing by Fulmer. Additionally, at no time prior to Fulmer's suspension did he receive a hearing to address any of the alleged allegations against him.

33.     When the District suspended Fulmer on May 30, 2012, he returned the Dell and Mac Book computers to the District.

34.     On May 30, 2012, within minutes of Fulmer being escorted from his office, the District publicly announced it had placed Fulmer on paid administrative leave. At that time, Fox, acting as the Board spokesman, expressly stated that the Board reached "a consensus" during the executive session without taking any formal vote as required by District rules and the Ohio Revised Code.

35.     Fox then conducted an interview with the *Newark Advocate* and was quoted as saying "we have just determined, out of respect for the position and out of respect for the chief, he needs to make a decision (whether or not to resign)." Fox added the Board did not place Fulmer on administrative leave due to any misfeasance or malfeasance in office. Fox said the

Board reached a "consensus" on the decision during a special meeting at the District office. It did not vote, he said.

36.     Subsequent to the announcement of May 30, 2012, the City of Pataskala's Council, news media and individuals questioned the legality of the District's action taken in the May 23 executive session.

37.     On June 4, 2012, Doug Joseph, the president of counsel for the City of Reynoldsburg and its representative to the Fire Board, resigned in protest. Joseph expressly stated that he could not "support the clandestine actions the Fire Board has taken recently regarding Mr. Fulmer."

38.     That same day, City of Pataskala council members, at their regularly scheduled meeting, voiced concern over the actions of the Fire Board and how it handled Fulmer's administrative leave. City Council members voiced their concerns with the District's violations of Ohio's Sunshine Law. City Council then voted to have its legal counsel, Rufus Hurst, research whether or not Council had standing to investigate the actions of the Fire Board.

38.     Later that day (June 4, 2012), the Fire Board called an "emergency meeting" for 9:00 p.m. and provided only 1.5 hours of notice to the public and press citing the emergency reason is for the "health and welfare of the residents of the Fire District." The Board then held an executive session and retroactively placed Fulmer on administrative leave and made Assistant Chief Ken Mathews acting chief.

39.     On June 5, 2012, Fulmer's counsel, David Comstock, Jr., forwarded a letter to Fishel requesting that the District copy the images of the hard drive and preserve the computers in anticipation of possible disciplinary action being taken against Fulmer.

40.　　On June 6, 2012, Doug Joseph participated in an interview with the *Columbus Dispatch*. In a reference to the actions by the Fire District, Joseph stated "I'm not an attorney, but I will say at the very least if it wasn't illegal, it was at least unethical and inappropriate given the situation." Joseph did not see a reason to put Fulmer on administrative leave. The Board's attorney, Marc Fishel, responded by stating "placing someone on administrative leave with pay did not require a Board action." This statement by Fishel is contrary to both District rules, the Ohio Revised Code, and the United States Constitution.

41.　　On June 7, 2012, the Fire District held a special meeting at 7:00 p.m. At that time, the Board took official action to "enter into a contract with R.L. Emmons and Associates to conduct an investigation pursuant to Ohio Revised Code Section 505.38(A)," despite the fact Board members had already decided to terminate Fulmer. Without notice to Fulmer's counsel, Fulmer was ordered to appear before the Board at this meeting by Myers. The order was rescinded when Comstock learned of the order and protested to Fishel.

42.　　The R.L. Emmons firm was hired as the result of the efforts and recommendation of Fishel. Richard Emmons (owner of R.L. Emmons and Associates) was to conduct the investigation of Fulmer. Fishel knew, and the defendants should have known, that Emmons had a history of threatening co-employees in the Miamisburg Police Department, interfering with a police investigation, intimidating employees from telling the truth with respect to an internal investigation, and intentionally interfering with an internal police investigation. In addition, it had been determined, and the defendants knew or should have known, that Emmons had previously demonstrated incompetence as an operations police lieutenant and had demonstrated that he could not competently handle the broad discretion and supervisory authority of a police supervisor.

11

43.    Emmons was far from an impartial and neutral investigator.  Emmons met with, and was provided direction by Myers.  Emmons met with all of the Board members, including Myers, Fox and Van Buren, individually to discuss why and how Fulmer should be removed.

44.    Emmons performed no other investigation.  Emmons then met with Fishel.  Fishel provided a document entitled "Summary of Complaints" to the Board.  Fishel then met with the Board and suggested 13 areas upon which Emmons should focus the investigation.

45.    These 13 areas of investigation were the 13 original charges later filed against Fulmer in September of 2012.

46.    Fulmer was then ordered to submit to an interview conducted by Mr. Emmons after being provided with his Garrity Rights.

47.    On July 20, 2012, Emmons conducted an administrative interview, as part of its investigation, of David Fulmer.  The interview of Fulmer lasted approximately 5.5 hours.  This was the first time that Fulmer had been advised of any of the allegations against him.

48.    On August 30, 2012, Comstock wrote to Fishel and requested a copy of the entire hard drive of Fulmer's District computer.

49.    On September 7, 2012, Emmons filed charges against Fulmer.

50.    On September 12, 2012, counsel for Fulmer, Comstock wrote to Fishel.  In the letter, Comstock asked that three Board members recuse themselves from hearing the charges since evidence had been presented that these Board members had already made up their minds to remove Fulmer.

51.    On September 12, 2012, Comstock again requested access to Fulmer's District computer.  The District did not respond to any of Comstock's requests for the computer.

52. On September 13, 2012, the *Newark Advocate* reported its interview with Fox. Fox stated that the District Board meeting and hearing of the charges against Fulmer would be continued based upon Fulmer's request for a 14-day extension. In light of the extension request, Fox said he supported removing the "paid" element from Fulmer's administrative leave on which he had been placed earlier that year.

53. On September 17, 2012, Pataskala City Council voted to have its law director, Rufus Hurst, conduct an investigation of Fox based upon a complaint against him. Fox was the City's representative to the Fire Board.

54. On that same day, an interview with Fox was recorded by *This Week Community News*. In the interview, Fox referred to the Fulmer investigative process and stated "it's a very frustrating situation." And with respect to the legal process – "it's absolutely ridiculous."

55. Subsequently, Fox (who represented the City of Pataskala on the Fire Board) was accused by a resident of wrongdoing. The accusations were indirectly related to the Fulmer disciplinary matter.

56. Based upon the resident's allegations, the City of Pataskala (through its law director) initiated an investigation. During the investigation, City of Reynoldsburg Council President Doug Joseph was asked to provide a sworn statement. During that statement (and subsequently in his October 19, 2012 testimony before the District's Board of Trustees), Joseph stated that based upon his conversations and interactions with the Board of Trustees, three Board members (Fox, Van Buren and Myers) were biased and had made up their minds to remove Fulmer before any investigation was ever undertaken by Emmons.

57. This testimony was confirmed by former Board member and Pataskala City Council member Pat Sagar when she testified that Van Buren wanted to oust Fulmer as early as February of 2012, even though the Chief had done nothing wrong.

58. On September 20, 2012, Fulmer filed a Writ of Mandamus with the Licking County Court of Common Pleas for the District's violations of the Ohio Open Meetings Act and Ohio Public Records laws (12CV1265). The open meeting violations related to the meetings of May 23 and June 4, 2012. The claim of the violation of the public records laws related to the District's failure to provide records which Fulmer had requested in regard to the charges which had been filed against him on September 7, 2012.

59. On September 21, 2012, Attorney Frank Hatfield, writing for either the Board or Emmons, rejected Fulmer's request that the three Board members recuse themselves. Hatfield is an attorney in the same law firm as Marc Fishel.

60. On September 25, 2012, Doug Joseph, council president for the City of Reynoldsburg and former Fire Board representative, was interviewed by Rufus Hurst, law director for the City of Pataskala. In the interview, Joseph stated that several board members, including Fox, Van Buren and Myers, had a premeditated motive to remove Fulmer.

61. On September 26, 2012, Fulmer submitted subpoenas to the District to compel the attendance of witnesses in support of his case. These subpoenas were not served upon the witnesses by Krugh as requested by Fulmer.

62. On October 1, 2012, the City Council of the City of Pataskala met and directed Fox to recuse himself from any part of the process regarding Fulmer's administrative hearing. This action was based upon the independent findings of its law director regarding Fox's bias against Fulmer.

63. On October 2, 2012, Fulmer received revised charges, via U.S. Mail, from R.L. Emmons and Associates.

64. On October 2, 2012, Hatfield and Fulmer's counsel, David Comstock, discussed the hearing scheduled for the next day. Comstock learned that his requested subpoenas were not served upon the witnesses.

65. On October 3, 2012, the Board held a "special meeting" which was to have been Fulmer's administrative disciplinary hearing. Hatfield attended the special meeting of the Board to request, on behalf of all parties, a continuance of the hearing scheduled that day based upon the District's failure to serve Fulmer's subpoenas. Counsel for Fulmer did not appear because the parties had agreed to allow Hatfield to provide notice to the Board that parties had reached a stipulated continuance. The Board rescheduled the disciplinary hearing to October 19, 2012 at 6:00 p.m. The Board agreed to issue the subpoenas requested by Fulmer. During the meeting, Fox indicated that he was recusing himself from the disciplinary process. The meeting was adjourned at 6:14 p.m. Fulmer's wife was in attendance at the meeting and sat in her car in the parking lot. As Board members informally met following the meeting, Myers pulled down a window blind blocking Fulmer's wife's view. At the time, he stated "this will piss her off."

66. On October 15, 2012, Emmons amended the original charges against Fulmer to include a new charge - Charge 3. This occurred four days before the Board's hearing on the charges scheduled for October 19. Emmons made this last-minute change even though he'd been investigating Fulmer for over four months and never discussed the facts and circumstances with Fulmer. The charge accused Fulmer of misconduct in office and/or misfeasance.

67. Specifically, the charge served upon Fulmer stated:

**Charge 3 - Misconduct in Office and/or Misfeasance. Violation of West Licking Joint Fire District Use of Internet, E-mail and Online Services Policy.**

**Specification #1** - Mr. Fulmer violated the above policy by downloading and/or otherwise importing to the District's computer system several documents from his previous employer. Specifically, Mr. Fulmer imported to his District email and/or the District server several documents from the Miami Township Fire Department.

68.     Fulmer received the new charge from R.L. Emmons that same day.

69.     On October 17, 2012 (two days before the scheduled hearing), the Board retained Attorney Doug Holthus of the Poling Law Firm to represent the Board. (There are no public record meeting minutes known to Fulmer that reflect a vote taken in public to retain the Poling Law Firm to represent the Board of Trustees.)

70.     On October 19, 2012, Fulmer was interviewed by R.L. Emmons just prior to the disciplinary hearing. Emmons asked about the archived Miami Township files and re-questioned Fulmer about prior Facebook postings as directed to do so by Myers.

71.     Later that evening, the Board entered into executive session to discuss "pending litigation" with its new legal counsel, Doug Holthus. However, at the time of this meeting, Holthus did not represent the Board of Trustees in any pending litigation. The Board discussed, in this executive session, matters other than the executive session's stated purpose. Specifically, they discussed the pending Fulmer case.

72.     By then, Fox had been prohibited from participating in the Fulmer matter. Had the Board utilized the proper designation for the executive hearing (employee disciplinary matters), Fox would not have been permitted to attend or otherwise participate. Despite this fact, Fox not only voted for the executive session, but thereafter participated in matters related to the Fulmer hearing.

73.     Hatfield represented Emmons at the hearing on October 19-20, 2012.  The Board was represented by Holthus.   However, the District and its employees continued to be represented by Hatfield's and Fishel's law firm (DFHK) in the pending Fulmer Common Pleas case (2012 CV 1265) and in other lawsuits filed against District Employees (Fifth District Court of Appeals Cases 11 CA 130 and 12 CA 36).

74.     It is not permissible for two attorneys from the same firm to represent both the Board of Trustees and the investigator in the same administrative proceeding.   No reasonable person would objectively believe that the employee could receive a fair hearing when such multi-client representation occurs.

75.     At the hearing on October 19, 2012, Fulmer's counsel, David C. Comstock, Jr., again asked that Board members Myers and Van Buren to recuse themselves.  The request was summarily denied by Myers.

76.     At the hearing, Fulmer presented evidence that three board members had actually made up their minds to remove Mr. Fulmer from his position before an investigator was ever appointed to determine whether any misconduct had occurred.  Thereafter, the investigator filed charges only after meeting with the Board of Trustees and its counsel.  Emmons testified that he would not have filed at least one charge but for the urging of the Board.  More importantly, the District ignored the basic argument raised by Mr. Fulmer – that Board members who had made up their minds to terminate him participated in a vote to both retain the investigator and his legal counsel (a member of the Board's own law firm) and thereafter provided direction to the investigator.  The fact that the Board utilized the services of its own attorney to communicate the direction of the investigation did not make the constitutional violation any less.

77.     At the hearing, Fulmer established both constitutional and procedural violations of his due process rights.  In addition to the Board bias and the improper influence of Fishel, Fulmer established that:

- Emmons and the Board failed to timely provide Fulmer with notice of the conduct that was allegedly prohibited.

- The Board failed to appoint a private citizen as required by R.C. §505.38.

- Emmons failed to file Charge 3 with the Board of Trustees as required by R.C. §§ 505.38 and 733.35.

- Charge 3 was not heard at the next regularly scheduled meeting of the Board of Trustees as required by R.C. §733.36.

More importantly, Fulmer established that there was absolutely no evidence to support any of the charges brought by Fishel and Emmons against him.  Emmons supported this position during his cross-examination.

78.     At the hearing, not only did Emmons acknowledge that he did not investigate many of the District's policies or speak to independent witnesses, he admitted that almost all of his investigation took place at the direction of the Board or the Board's law firm.

79.     For example, Emmons testified that he did not consider one of the issues regarding a Facebook posting to be significant.  Yet, Emmons changed his mind and filed a specific charge relating to a June 2011 Facebook posting by Fulmer after he consulted with Myers.  Emmons also filed charges despite the fact he admitted that many of the allegations relating to wrongdoing did not violate any specific rule, regulation, or policy or related to actions that had been expressly approved by the prior Board.  Surprisingly, the evidence also established that District employee Krugh withheld evidence favorable to Fulmer from Emmons.

18

80. Due process requires a person to have notice of conduct that is prohibited. Fulmer was charged with allegedly violating the District's Internet, E-mail and Online Services policy. However, Emmons later testified that Fulmer was not being accused of violating any specific District policy. As a result, the District could not articulate what conduct was prohibited.

81. Finally, both Hatfield and Emmons lied about the Miami Township computer evidence when both stated, during the hearing, that they had only recently received the evidence which necessitated filing Charge 3 four days prior to the hearing. In fact, the defendants had known about the computer evidence for several months and had withheld it from Fulmer despite the repeated requests of Fulmer and his attorney (Comstock) for it.

82. Following the hearing of October 19, 2012, but before the Board met and voted to terminate Fulmer on November 8, 2012, Myers spoke to a reporter of the Columbus Dispatch. In the article of October 21, 2012, Myers stated that the Board was being careful to follow the law *in removing* Fulmer from his post. Likewise, Fox informed the Columbus Dispatch that the evidence presented would make clear that Fulmer should be fired. (Columbus Dispatch, October 19, 2012 article.)

83. These statements were made prior to deliberation of the evidence by the Board, and clearly demonstrated that Myers and other Board members had already decided the case and were acting in bad faith.

84. Following the October 19, 2012 disciplinary hearing, Fulmer requested the billing invoices of R.L. Emmons. Neither Emmons nor the Board produced the invoices until November 8, 2012, when the Board had already rendered its decision. The invoices clearly reflect that Emmons spoke to Board members on September 26 and September 29 – after

Emmons had already filed charges with the Board. At that time, there would be no need to speak with the Board members relating to any additional investigation or to obtain facts. Furthermore, Emmons called a Board member on October 15, 2012, which again demonstrates the interaction between the purported "independent" investigator and the Board.

85.    Prior to the Board meeting on November 8, 2012, (the Board meeting which was scheduled to discuss the evidence against Fulmer), the Board held an executive session with Attorney Holthus to discuss "pending litigation". However, at the time of this meeting, Holthus did not represent the Board of Trustees in any pending litigation. The Board discussed, in this executive session, matters other than the executive session's stated purpose. Specifically, the Board discussed the Fulmer case. In addition, and despite being instructed not to have involvement in the disciplinary matter, Fox again participated in this executive session.

86.    On November 8, 2012, the Fire Board conducted its regularly scheduled meeting. In open session, the Board voted to terminate Fulmer's employment with the only dissenting vote being Foor.

87.    Foor later admitted that he did not receive the latest charge (computer allegation) against Fulmer until he arrived at the October 19, 2012 meeting.

88.    Following his termination, Fulmer inquired with Krugh and Holthus about his insurance coverage pursuant to the Federal Consolidated Omnibus Budget Reconciliation Act (COBRA). The District ignored Fulmer's multiple pleas to provide coverage (or any information at all regarding his insurance coverage). Following Fulmer's termination the District failed to provide the necessary COBRA notice. Fulmer was forced to cover out-of-pocket expenses and eventually obtained coverage through a new employer.

20

89.     On November 16, 2012, Fulmer filed his appeal of his termination with the Licking County Court of Common Pleas (Case No. 13CV1495).

90.     On appeal, the District questioned whether Mr. Fulmer had a protected property interest in his continued employment. The District claimed that Mr. Fulmer was an employee-at-will; and, as a result, did not have a property right in his continued employment. This proposition of law was and is contrary to longstanding established Ohio law. At the very least, Fulmer's response and recitation of case law reminded the District of Fulmer's property interest in his position.

91.     On November 19, 2012, Fulmer filed an official complaint with the City of Pataskala against Fox for his failure to recuse himself from the administrative hearing as directed by counsel.

92.     On December 10, 2012, the City of Pataskala Council authorized its law director, Rufus Hurst, to conduct an investigation into the actions of Fox based upon the complaint filed by Fulmer and a complaint filed by a citizen, John Rinard.

93.     On March 4, 2013, Hurst issued a report to City Council stating that there was insufficient evidence to continue the investigation against Fox.

94.     On April 18, 2013, the Licking County Court of Common Pleas overturned the Fire District's termination of Fulmer based upon a complete lack of evidence to support the charges against Fulmer. The court did not address the constitutional or procedural defect complete lack of evidence to support Fulmer's termination.

95.     On April 23, 2013, the Fire District Board voted 5 to 1 to appeal the Common Pleas Court ruling overturning the Board's termination of Fulmer. The dissenting vote was filed by Foor.

96.     On June 18, 2013, depositions of several Fire Board members were taken in Franklin County in connection with the Licking County Court of Common Pleas Writ of Mandamus case (Case No. 2012-CV-1265). In his deposition, Fox perjured himself by stating, among other things, that he did not participate in Fulmer's disciplinary case, including the two executive sessions held in October and November.

97.     On July 22, 2013, a heavy rainfall caused a section of foundation to collapse at a building leased by Fox. The West Licking Joint Fire District responded to the collapse and attempted to secure the area in order to protect the public. At that time Fox attempted "to obstruct official business by interfering with the fire department." Fox also threatened a public official – a certified fire safety inspector who had been recommended for hire by Fulmer – with termination as she attempted to perform her official job duties.

98.     The City of Pataskala Council subsequently received the deposition transcripts of the various Board members taken in the mandamus action (Case No. 12CV1265). Upon review, the City of Pataskala law director issued a report to members of Council on August 6, 2013 indicating that sufficient evidence then existed to proceed with an investigation into Fox's failure to recuse himself from Fulmer's disciplinary hearing as well as a separate incident involving the building and the fire department.

99.     On September 12, 2013, Holthus forwarded a letter to Fulmer's counsel indicating that the District had done a further investigation of Fulmer's laptop computer and was taking issue with newly found items. In the letter, Holthus, writing on behalf of the Board, stated:

> Our suggestion: (a) your client will agree not to return to the District as Chief or in any other capacity; (b) both parties will agree to dismiss all pending and further claims and causes of action; (c) the pending appeal will be dismissed; and (d) a corresponding agreed judgment entry will be filed with the trial court. If not, this information will be shared as appropriate with the local press and will also serve as the basis for the District's next termination proceedings.

22

100.  With the letter several CD disks with computer files were enclosed. The files were date stamped August 6, 2013.

101.  The letter forwarded by Holthus, on behalf of the Board, violates R.C. §2905.11(A)(5) and 18 U.S.C. §1951.

102.  On November 21, 2013, the Fifth District Court of Appeals held oral arguments regarding the District's appeal of the Licking County Court of Common Pleas' decision overturning Fulmer's termination. During oral arguments, Holthus conceded to the Court, under direct questioning by one judge, that at no time during Fulmer's administrative hearing, or during Fulmer's appeal with the Licking County Court of Common Pleas, did the District present any evidence that Fulmer violated any District policies or procedures.

103.  On November 25, 2013, City of Pataskala Mayor Steve Butcher forwarded a letter to Fox indicating that the Mayor was scheduling a disciplinary hearing involving the allegations against Fox in front of City Council.

104.  On December 16, 2013, the City Council had to vote on a budget amendment for legal fees for a special prosecutor to investigate and potentially prosecute charges against Fox. Although the vote was directly related to Fox, Fox failed to abstain and voted against the appropriation.

105.  On January 9, 2014, the Fifth District Court of Appeals upheld the Licking County Court of Common Pleas' decision overturning the Fire District's termination of Fulmer.

106.  The City of Pataskala scheduled the disciplinary hearing against Fox relating to the allegations of malfeasance on January 14, 2014. The hearing was continued until the following day so Council could appoint someone other than Rufus Hurst to mediate the hearing.

107.    On January 15, 2014, the City of Pataskala resumed the disciplinary hearing against Fox. Prior to the hearing, Council and Fox agreed to a negotiated deal which required Fox to apologize for the three malfeasance charges brought against him and for him to accept a reprimand. City Council members vote 4 to 1 to accept the agreement. Thereafter, Fox apologized and accepted the malfeasance charges, acknowledging that he participated in the disciplinary proceedings involving Fulmer after being directed by City Council not to do so (implicitly admitting to perjury in his June 18, 2013 deposition). Fox also apologized for the July 22, 2013 incident, acknowledging that he attempted "to obstruct official business by interfering with the fire department operations." Fox also apologized for a third charge which related to his budget vote on the retention of special counsel which occurred at the December 16 special meeting.

108.    On February 13, 2014, the West Licking Joint Fire District held its regularly scheduled monthly meeting. Following an executive session, the Board approved a new organizational structure with an administrator as the head of the organization. This new structure is in violation of R.C. §505.38, and was intended to eliminate any future involvement by Fulmer with respect to the Board. At that meeting, the Board also reinstated Fulmer, but immediately placed him on administrative leave. The Board then authorized Steve Little, the interim administrator, to hire someone to investigate the alleged misconduct of Fulmer. At no time did the Board directly appoint an investigator as required by Ohio Revised Code Section 505.38.

109.    On February 14, 2014, the Fire District sent a registered letter to Fulmer advising him that he was placed on administrative leave until the Board had completed its review of the "situation." The Board never informed Fulmer as to why he was placed on administrative leave. The Board failed to demonstrate any bases for placing Fulmer on administrative leave as

24

required by the Ohio Revised Code. The Board never provided an opportunity for Fulmer to refute the charges. No end date for the suspension was provided.

110.     During this period of time, Comstock and Holthus discussed Fulmer's employment status. Holthus made clear that the defendants would not permit Fulmer to return to his job, and had no intention of permitting him to serve in the position of fire chief with the District ever again.

111.     On March 13, 2014, the District held its regularly scheduled Board meeting. The Board again took no action to appoint an investigator. However, Little informed the Board that he had retained an investigator and the Board should have a report by April 10, 2014. This time frame was set before Little had any information from Fulmer. Subsequent to this meeting, Fishel contacted Comstock regarding the ability of the investigator to interview Fulmer. Comstock advised Fishel of his busy trial schedule. Fishel responded by stating that this wouldn't take long.

112.     On March 21, 2014, Doug Duckett contacted Comstock, counsel for Fulmer, and provided a list of dates that he was able to conduct an interview of Fulmer. Fulmer's counsel responded on March 25, 2014 with his available dates.

113.     On March 26, 2014, Fishel contacted Comstock and advised him that the District was on a short time schedule and they will have the report to the Board by April 10, 2014. Fishel advised that there would be no continuances and stated that while Fulmer was entitled to legal counsel, he was not entitled to counsel of his first choice. Fishel advised that if Comstock was not available, Fulmer should seek additional counsel. Comstock advised that he was attempting to free up dates and/or find additional counsel for Fulmer.

114. On March 28, 2014, Fulmer received a call from Little advising Fulmer to report to the District headquarters to pick up a notice. Fulmer picked up a notice ordering him to appear for a meeting with Investigator Duckett on April 1, 2014. Fulmer asked Little about the status of his medical insurance, and Little stated that he would have to check. Fulmer also sent a letter to F. Harmon, the District Insurance Broker, inquiring on the status of insurance.

115. When Comstock was notified by Fulmer regarding the scheduled hearing date, Comstock protested. The District then rescheduled the interview for April 4, 2014, but as a result of the rescheduling, Fulmer was required to obtain representation from alternate counsel, Paul Bittner, at additional cost to him, as Comstock was not available.

116. On March 31, 2014, Fulmer was notified by the insurance broker, F. Harmon, that his insurance paperwork was being expedited. When asked why it took so long, F. Harmon stated that the District did not submit the paperwork until March 28, 2014, despite the fact that Fulmer had been requesting insurance coverage for months.

117. On April 3, 2014, Fulmer was advised by Little via email that "You are not to attend any function representing or as a representative of the West Licking Joint Fire District." This was a result of Fulmer notifying Little on his intent of attending the Fire Department Instructor Conference in Indianapolis, Indiana and the Congressional Fire Service Institute Dinner and Board meeting of the International Association of Fire Chiefs – Volunteer & Combination Officers Section, of which Fulmer was a Board member. Little's decision came prior to any investigation or any deprivation hearing. Little's decision ultimately resulted in Fulmer having to tender his resignation from his Board position with the IAFC-VCOS, a position which he held prior to his employment with the District and negotiated in his offer of employment.

118.    On April 4, 2014, Fulmer was interviewed in Columbus, Ohio by Duckett. Little was also present. The interview took place at the law offices of Fishel and Fishel met with Duckett and Little during breaks in the interview. Fishel greeted Bittner and was aware of Bittner's attendance and role at the interview. Duckett instructed Fulmer that he [Duckett] was acting with the "full authority" of the Board, thereby making Duckett an actor under color of law.

119.    On April 10, 2014, Duckett issued his "Investigatory Report and Charges." The report specified four charges against Fulmer:

- Charge No. 1: Fire Chief David B. Fulmer repeatedly violated the provisions of Policy 700.07 (Technology) through his deliberate misuse and reckless mismanagement of District-owned laptop computers and thereby committed misconduct in office, malfeasance, nonfeasance, and gross neglect of duty.

- Charge No. 2: Chief David Fulmer used the Dell and MacBook Pro laptops owned by the District for private business ventures for profit in violation of the Technology Policy, which constitutes both misconduct in office and malfeasance.

- Charge 3: Chief Fulmer's mismanagement of the laptop computers and claimed lack of responsibility for enforcing policies constitute gross neglect of his duties and misfeasance or nonfeasance.

- Charge 4: Chief Fulmer was dishonest in the interview—both through outright lies and through evasion and intellectual dishonesty—in direct violation of orders he received at the outset. This constitutes misconduct in office and malfeasance through insubordination.

120.    On April 10, 2014, Duckett submitted his report to Little, who in turn provided it to the Fire District Board for its monthly meeting.

121.    The District conducted its regularly scheduled meeting that evening (April 10). During the meeting, the Board accepted the report and directed, through motion, Little to prepare the official charges and specifications against Fulmer. Little was also instructed to file the

charges with the Board and with Chief Fulmer, in contradiction of R.C. §§ 505.38 and 733.35, et al.

122.     Little contacted Fulmer on April 15 and ordered him to report to the Fire District. Little gave Fulmer a letter that stated, "[p]ursuant to action taken by [the Board] at their regular meeting on April 10, 2014, please find attached a copy of the charges and specifications being brought against you. These charges and specifications are scheduled to be heard by the Fire Board during their next regularly scheduled meeting on May 8, 2014 . . . ." The action referred to in the letter was the Board's vote on April 10, 2014 to accept Duckett's report and instruct Little to prepare formal charges and specifications. Fulmer then requested an extension of time for the hearing on the charges, and it was rescheduled for June 3, 2014.

123.     Fulmer was also given notice that he was to turn in any and all District property.

124.     On that same day (April 15, 2014), Comstock submitted a letter for continuance to Holthus and Fishel, and provided dates as to when he would be available to represent Fulmer at an administrative disciplinary hearing.

125.     On April 24, 2014, Fishel notified Comstock that the continuance would be granted and that the administrative hearing would be held on June 3, 2014.

126.     On May 23, 2014, Paul Bittner submitted a notice of appearance for himself and Angela Courtwright as co-counsel with Comstock.

127.     On May 28, 2014, Bittner received correspondence from Fishel indicating that the Board was refusing to accept Bittner's notice of appearance because the Board believed Bittner was conflicted as a result of previously representing the District in 2010 and 2011. This letter ignored the fact that Bittner had already represented Fulmer at Duckett's interview of Fulmer on April 4, 2014 – a representation which was forced due to Duckett's refusal to accommodate

28

Comstock's schedule. Fishel's letter was written on behalf of the Board, despite the fact that Holthus was acting as counsel to the Board. This is just one of many examples where Fishel appeared to serve two masters to the detriment of Fulmer.

128. On May 30, 2014, Bittner's law firm, Ice Miller, sent correspondence to Fishel regarding the alleged conflict. Fishel responded on June 2, 2014.

129. As a result of Fishel's and the Board's refusal to recognize Fulmer's counsel, Fulmer, through counsel, filed a motion with the Licking County Court of Common Pleas asking for an evidentiary hearing and a stay of the hearing scheduled for 6:00 p.m. that date until the conflict allegation could be resolved. The Licking County Court of Common Pleas issued the stay and scheduled the matter for a hearing.

130. Fulmer and Bittner appeared for the original hearing, and after an agreement reached with the Holthus and Fishel, any alleged conflicts were waived and the hearing was postponed until June 17, 2014.

131. In the meantime, Duckett lodged two additional charges against Fulmer in an addendum to his original report. This addendum was emailed to Little on June 12, 2014, who then, in turn, emailed it to the Board members. Prior to his April 4 interview of Fulmer, Little informed Duckett that a former employee, Terra Metzger, recently claimed that Fulmer sexually harassed her by texting a nude picture to her in August 2010, before she accepted employment with the District. In early June 2014, Duckett interviewed Metzger, determined her claims were credible, and on June 12, 2014 drafted an "Addendum to Investigatory Report and Charges."

- Charge No. 5: Fire Chief David B. Fulmer violated the provisions of Policy 700.07 (Technology) by using a District owned cell phone to transmit an image of a naked woman's torso and exposed breasts to Terra Metzger, a prospective employee who had accepted a job offer and was about to start work as the District's human resources officer.

- Charge No. 6: Chief David Fulmer violated the District's sexual harassment policy, which constitutes both misconduct in office and malfeasance.

132. Little e-mailed the addendum to Fulmer and his counsel on June 12, 2014. Neither the original charges nor the addendum indicated that Fulmer could be terminated as a result of the charges.

133. The Board considered all of the charges against Fulmer at a special meeting of the Board on June 17-18, 2014, just five days after Little e-mailed the addendum to Fulmer and his counsel. The hearing continued on July 8-9, 2014.

134. Prior to the commencement of the hearing on June 17, 2014, Fulmer requested that the Board hear the charges in executive session, knowing that the investigator and various witnesses might attempt to defame him. The Board of Trustees, who were aware of the charges and the possible stigma that could be associated with presenting the evidence in public, refused to hold the hearing in executive session.

135. At the hearing, Fulmer again raised the Board's unconstitutional violation of his procedural due process rights. First, Fulmer raised the issue that the Board was biased against him and that, based upon established law, those members of the Board that had clearly demonstrated their bias needed to recuse themselves. Again, Fulmer's request was ignored. The hearing proceeded with Fishel representing either the investigator Duckett or Administrator Little (or both). Like Hatfield in the first hearing, Fishel had continually represented the Board of Trustees in other matters and had a clear conflict of interest as it related to Fulmer's due process rights. Fulmer also pointed out that he was being charged with violating policies which were not in existence at the time the alleged offenses occurred.

136. With respect to specific procedural due process requirements, Fulmer pointed out that the Board had (despite the Board being warned of the procedural irregularities in Fulmer's

first termination hearing) failed to follow the procedural requirements of the Revised Code. Specifically:

- The Board failed to act pursuant to R.C. §505.38 by designating a private citizen to investigate.

- Duckett failed to prepare the charges as required by R.C. §505.38.

- Duckett failed to follow the requirements of R.C. §733.35 by filing the written charges against Fulmer with the Board, or filing the return of charges with the Board.

- The Board failed to consider the June 12, 2014 charges at the next regularly scheduled meeting as required by R.C. §733.36.

- The defendants failed to immediately initiate removal proceedings as required by R.C. §733.35.

- The defendants did not conduct a hearing within 15 days of Fulmer's suspension as required by R.C. §733.37.

137.    The evidence also revealed that the defendants had utilized an unlicensed investigator in violation of R.C. §4749.01(A).

138.    Evidence was also presented that Little and other District employees or agents had destroyed or spoliated evidence that would assist Fulmer in the defense of his case, despite repeated earlier attempts that the defendants do so.  (See Comstock letters of June 5, August 30, and September 12, 2012.)

139.    The testimony in Fulmer's second disciplinary hearing revealed that Steve Little began accessing Fulmer's laptops which were allegedly in a locked filing cabinet in March 2013. Little claimed that he was updating policies and wanted to see if there were policies on either of Fulmer's old laptops.

140. Little allegedly looked through the computers in July or August 2013 and called Kristopher Haley of Keytel Systems. Haley cloned the hard drive of the Dell but not the Mac. The District never maintained a chain of custody log for the laptops. Little did not log any of his activities when accessing the computer, and Haley testified he did not create any reports to document his work on the computers in 2013.

141. Little testified he was not aware of anyone accessing the laptops prior to March of 2013, but the District's unlicensed forensic accounting expert's investigation revealed significant access to the laptops after Fulmer's relinquished possession of them on May 30, 2012. After that date, ProFile Discovery found that files were accessed, modified and deleted on multiple occasions, but ProFile Discovery could not say who performed those functions. Keck admitted that the computers presented to him were not the same as when Fulmer last used them. Although Keck could testify regarding the authenticity of the files found on the computer when it was presented to him, he could not testify regarding the use of the computers between May 2012 and February 2014 (when the computers were presented to ProFile Discovery). Furthermore, many of the files did not have date or time stamps and ultimately Keck could not present any evidence as to who actually used the computer during that period or who viewed the actual images in question.

142. The evidence revealed that despite the fact Fulmer relinquished control of the laptops on May 30, 2012 and Comstock requested the preservation of the computers and the evidence, the District and its employees or agents ignored these requests and purposely altered the computers and all files associated with them.

143. At the hearing, Fulmer also asked the Board to consider the letter Holthus authored on September 12, 2013 as evidence of the Board's bias, prejudice and the delay in

32

bringing charges against Fulmer. Despite the fact that letter was forwarded to Fulmer's counsel, Comstock, the Board refused to permit the document to be entered into evidence claiming that it was protected by the attorney/client privilege.

144. Almost all objections raised by Fulmer's counsel were overruled during the hearing by Board President Van Buren, who was asked to recuse himself due to his bias.

145. In addition to the Board's bias and failure to observe constitutional procedural and substantive and due process safeguards, no evidence was produced to support the allegations of Duckett, Little or the termination decision reached by the other defendants.

146. During the hearing, Duckett changed his testimony, admitting that there were errors in his report. He admitted that he did not have actual evidence of wrongdoing and, in fact, failed to interview key witnesses during the investigation. In fact, many of Duckett's conclusions were based on nothing more than speculation and not on any substantive evidence. Duckett's testimony of both his initial interview of Fulmer and during the hearing demonstrated a clear hostility towards Fulmer. Duckett, as an attorney, should also have realized that he charged Fulmer with violating policies that did not exist at the time the alleged misconduct took place and relied upon an investigation that he knew, or should have known, as an attorney, was conducted by an unlicensed investigator.

147. During the hearing, Duckett, Little and Fishel introduced evidence that was false, and which they knew or should have known was false. Specifically, they alleged that members of Fulmer's family or Fulmer himself downloaded inappropriate material and used computers to view sexually explicit websites. They also accused Fulmer of using the laptops for private business ventures for profit. These Defendants knew that these statements and accusations by them would be reprinted in the local press, which they were.

148. Despite the constitutional violations, procedural errors, common law defenses, irregularities and complete lack of evidence, the Board of Trustees voted to terminate Fulmer on July 10, 2014. The Board voted on each of the charges against Fulmer and voted in favor of Fulmer's immediate termination on Charges 1, 3, 4 and 6. In a letter dated July 11, 2014, counsel for the Board informed Fulmer that the Board's vote was based "upon a preponderance of probative, reliable and substantial evidence presented" and instructed Fulmer to make arrangements with Little to retrieve any personal items he might still have had at the District. The actions of the Board and its individual members constitutes a ratification acceptance and adoption of the false allegations made by Duckett, Little and Fishel.

149. On July 15, 2014, Fulmer timely appealed his termination to the Court of Common Pleas of Licking County, Ohio. This appeal process does not constitute a pre-deprivation hearing, and would not adequately serve as a "name-clearing hearing." The District has, for the second time, claimed that Fulmer is an employee-at-will who is not entitled to due process – a position contrary to state law.

150. The appeal remains pending in the Court of Common Pleas of Licking County, Ohio.

151. As a result of the conduct set forth in the previous paragraphs, Fulmer has incurred economic damages in an amount in excess of Fifty Thousand Dollars ($50,000.00), has lost benefits in an excess of Fifty Thousand Dollars ($50,000.00), has incurred miscellaneous expenses in an amount in excess of Ten Thousand Dollars ($10,000.00), and has incurred legal fees in an amount in excess of One Hundred Thousand Dollars ($100,000.00).

152. These economic losses are continuing in nature and will be proven at trial.

34

153.    In addition, Fulmer has suffered in his reputation based upon the baseless allegations and charges filed against him by the defendants, in conjunction with his termination.

## FIRST CAUSE OF ACTION

### 42 U.S.C. §1983 –2014 Suspension

154.    Plaintiff incorporates the allegations set forth in paragraphs 1 through 158 of this Complaint as though fully rewritten herein.

155.    Fulmer was at all times relevant to this Complaint the duly appointed Fire Chief of the West Licking Fire Chief and had a property interest in that position as provided for by R.C. §505.38.

156.    Myers, Van Buren, Fox, Hicken, Foor, Denton and McGrady deprived Fulmer of his property interest without due process of law under color of law in violation of the due clause of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. §1983.

157.    Specifically, these Defendants suspended Fulmer from his position from the period of February 2014 through June 2014 without providing him notice of any alleged violations, the timely opportunity for a hearing with respect to the suspension, and failed to provide him with a timely post-deprivation hearing.

158.    R.C. §§ 124.388 and 733.37, and the rules and regulations of the District provide mandates for placing an employee on suspension or administrative leave.

159.    The District violated the provisions of the Revised Code and its internal regulations by failing to provide any basis for the leave and providing any other means by which to contest the basis for the leave.

160. The State of Ohio does not provide a basis for review of being placed on administrative leave and therefore there are no adequate remedies of law to address the denial of his due process rights.

## SECOND CAUSE OF ACTION

### 42 U.S.C. §1983 – 2014 Termination

161. Plaintiff incorporates the allegations set forth in paragraphs 1 through 165 of this Complaint as though fully rewritten herein.

162. Fulmer was at all times relevant to this Complaint the duly appointed Fire Chief of the West Licking Joint Fire District and had a property interest in that position as provided for by R.C. §505.38.

163. In 2014, Myers, Van Buren, Foor, Denton, Hicken, McGrady and Little and deprived Fulmer of his liberty interest without due process, under color of law in violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. §1983.

164. These defendants failed to follow the mandated prescriptions for due process as set forth in R.C. §§ 505.38 and 733.35, et al. and otherwise deprived the Plaintiff of a fair hearing as set forth in the paragraphs above.

165. During the course of his employment and as part of the termination process, Defendant Little and others at the direction of Defendant Little, made statements regarding Plaintiff's alleged immorality or dishonesty, which were untrue and these individuals knew or should have known that they were false. For example, these individuals accused the Plaintiff of placing pornography and sexually explicit material on his computer when there was no evidence that he did so.

166.     The Defendants voluntarily disseminated or published these allegations to the public knowing that they were false. In fact, Plaintiff requested that his disciplinary hearing be held in executive session. Instead, the Defendants deliberately chose to hold the hearing in public where they could make statements to the public and press knowing that they would be disseminated widely. The aim, as reflected in Holthus's letter of September 9, 2013, was to harm the reputation of the Plaintiff.

167.     The Defendants made statements in the course of the employee's discharge that have seriously damaged his standing and associations in the community and/or that have imposed upon him a stigma or other disability that will foreclose his freedom to take advantage of other employment opportunities.

168.     Despite the fact that the utterance of the statements by these Defendants was injurious to Fulmer's reputation, and that the defamatory statements created or threatened a stigma to his reputation, Defendants Myers, Van Buren, Foor, Hicken, Denton and McGrady adopted these statements and thereafter created a state imposed burden when they terminated Plaintiff's employment, depriving him of his liberty interest without sufficient process. The Defendant members of the Board of Trustees ratified and adopted, through their actions of termination, the false statements made by Fishel, Duckett and Little.

169.     Fulmer has a liberty interest in his reputation, good name, honor and integrity which is protected by the due process clause of the Fourteenth Amendment. Defendant's "sham hearing" did not constitute an adequate name clearing hearing within the requirements of the Fourteenth Amendment as it did not provide him with an opportunity to refute the charges based upon the hearing panel's bias and the false testimony provided by the Defendants.

170.     Any post-deprivation remedy provided by statute is wholly inadequate in that it will only permit Fulmer to retain his job.

171.     The conduct of the Defendants violated clearly established statutory and/or constitutional rights of which any reasonable person would have known at the time the violation by the Defendants occurred.

### FIFTH CAUSE OF ACTION

### 42 U.S.C. §1983 – West Licking Joint Fire District

172.     Plaintiff incorporates the allegations set forth in paragraphs 1 through 176 of this Complaint as though fully rewritten herein.

173.     At the time of the suspensions and terminations in 2012 and 2014, Defendants Myers, Van Buren, Fox, Foor, Denton, McGrady and Hickin constituted the governing Board of Trustees of the Fire District, and as such, constituted the policymakers and those governmental officials with final authority to make employment decisions.

174.     The decisions to suspend Fulmer, to terminate Fulmer, and to deprive him of his liberty interest constitute policies established by the Fire District by virtue of the actions of the Board.

175.     The facts set forth in the preceding paragraphs, including, but not limited to Fulmer's two separate suspension and two separate terminations, establish that his deprivation of employment was the result of deliberate indifference or gross negligence on the part of those Board members.

176.     Furthermore, actions taken by Krugh, Emmons, Little and Duckett were, to the extent they deprived Fulmer of any constitutional and procedural due process rights, explicitly or implicitly, authorized by the Board of Trustees.

177.    These actions by all Defendants constitute customs, policies and decisions which resulted in the violation of Fulmer's protected property interest and liberty interest.

178.    The Fire District is therefore directly liable for the violations.

179.    As a result of the acts, omissions or conduct of the Defendants set forth above, Plaintiff is entitled to compensatory damages, punitive damages, attorney fees and costs of this action.

## SIXTH CAUSE OF ACTION

### Ohio R.I.C.O.

180.    Plaintiff incorporates the allegations set forth in paragraphs 1 through 184 of this Complaint as though fully rewritten herein.

181.    Defendants are or were, at all times relevant to this Complaint, members affiliated directly or indirectly with the West Licking Joint Fire District located in Licking County, Ohio.

182.    Defendants constitute an ongoing group of persons associated in fact, and can for the purpose of this Complaint be defined as an "enterprise" pursuant to R.C. §2923.31(C) (hereafter referred to as the "Enterprise").

183.    Defendants, while associated with the Enterprise, conducted or participated in, directly or indirectly, the affairs of the Enterprise through a pattern of corrupt or racketeering activity, as defined by R.C. §2923.31(E) and (I)(1)(2)(a)(b) and (c) in violation of R.C. §2923.32(A)(1) and (3).

184.    The specific acts constituting corrupt or racketeering activity are set forth above in the factual section of this Complaint, include, but are not limited to a violation of the Hobbs Act, 18 U.S.C. §1951, and violations of R.C. §2905.11(A)(5) (extortion), §2921.11 (perjury),

§2921.12 (tampering with evidence), §2913.42 (tampering with records), and §2921.03 (intimidation).

185.   Defendants aided, planned, conspired or agreed that one or more of the Defendants would engage in the pattern of corrupt activity in violation of R.C. §2923.01 (conspiracy).

186.   Many of the acts of the Defendants were performed with malicious purpose, in bad faith, in a reckless or wanton manner, or with a conscious disregard of the rights of the Plaintiff.

187.   The Defendants, and particularly the West Licking Joint Fire District, knowingly received monetary benefits, by depriving the Plaintiff of his employment, as a result of the pattern of corrupt activity set forth in the preceding paragraphs; and used or invested, directly or indirectly, part or all of the money in the operation of the Enterprise in violation of R.C. §2923.32(A)(3).

188.   The acts or omissions of the Defendants arise out of the Plaintiff's employment relationship with the West Licking Joint Fire District.

189.   Pursuant to R.C. §2923.34(B), Plaintiff is entitled to compensation for the damages he has incurred as a result of the Defendant's pattern of corrupt activity.

190.   Pursuant to R.C. §2923.34(C) and (E), Plaintiff is entitled to treble damages of any and all actual damages proven.

191.   Pursuant to R.C. §2923.34(G) and (H), Plaintiff is entitled to reasonable attorney fees, litigation costs and expenses.

## SEVENTH CAUSE OF ACTION

### Civil Conspiracy

40

192. Plaintiff incorporates the allegations set forth in paragraphs 1 through 196 of this Complaint as though fully rewritten herein.

193. Defendants Myers, Van Buren, Fox, Foor, Denton, McGrady, Hickin, Krugh, Emmons, Little along with Duckett, Marc Fishel and Frank Hatfield conspired, in combinations of two or more individuals, to injure the Plaintiff in his constitutionally protected employment position and reputation and, as a result of their joint effort(s), caused actual damages to the Plaintiff by virtue of his employment terminations.

194. The actions of the Defendants included violations of 18 U.S.C. §1951, R.C. §2923.31, §2923.32, §2905.11, §2921.1, §2921.12, §2913.42, and §2921.03, §2923.01, §2923.34 and R.C. §2921.45 (interfering with civil rights).

195. At all relevant times, the individual Defendants acted without a reasonable or lawful basis, and with malice, willfully or wantonly, and/or with a conscious disregard of Fulmer's rights.

196. The District is liable for the (willful, wanton or reckless) acts or omissions of its employees or agents, as these acts arose out of Fulmer's employment position with the District.

197. As a result of the acts, omissions or conduct of the Defendants set forth above, Plaintiff is entitled to actual damages, punitive damages, attorney fees and costs of this action, interest, and other relief as this Court deems just.

## EIGHTH CAUSE OF ACTION

### Spoliation

198. Plaintiff incorporates the allegations set forth in paragraphs 1 through 202 of this Complaint as though fully rewritten herein.

41

199. At the time of Fulmer's suspension in May of 2012, litigation involving Fulmer was probable.

200. In May of 2012, and at all times thereafter, the individual Defendants knew that litigation with Fulmer was probable.

201. Despite this knowledge, the Defendants, and particularly Emmons, Little and Krugh, willfully destroyed evidence which was designed to disrupt Fulmer's case, including the defenses to the administrative charges filed against him, his public records and sunshine law cases, and this action, despite Fulmer's specific written requests to preserve the evidence.

202. The willful destruction of evidence by the Defendants resulted in the actual disruption of the Plaintiff's case.

203. As a result of the disruption, Fulmer suffered damages proximately caused by the willful acts of the Defendants.

204. The District is responsible for the acts of its employees or agents acting on its behalf, as the acts arose as a result of Fulmer's employment with the District.

205. Fulmer is entitled to compensatory damages, punitive damages, attorney fees, interest, costs and other relief as this Court deems just.

## NINTH CAUSE OF ACTION

### C.O.B.R.A.

206. Plaintiff incorporates the allegations set forth in paragraphs 1 through 210 of this Complaint as though fully rewritten herein.

207. Following Plaintiff's terminations in 2012 and 2014, Defendant West Licking Joint Fire District failed to comply with the provisions of the Consolidated Omnibus Budget

Reconciliation Act, in that it failed to provide the Plaintiff with the required documents and information following his terminations.

208.    In both instances, Defendant, by and through its agents, was aware of the requirements of the Act as COBRA information was requested by Plaintiff.

209.    Defendant West Licking Joint Fire District is liable to the Plaintiff for all health care costs and other expenses, including attorney fees, incurred by him following his terminations in 2012 and 2014.

WHEREFORE, Plaintiff David Fulmer demands against Defendants, jointly and severally as follows:

1.    On his First Cause of Action:  Actual damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00); Punitive damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00); attorney fees, costs, interest and other relief as this Court deems just.

2.    On his Second Cause of Action:  Actual damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00); Punitive damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00); attorney fees, costs, interest and other relief as this Court deems just.

3.    On his Third Cause of Action:  Actual damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00); Punitive damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00); attorney fees, costs, interest and other relief as this Court deems just.

4.    On his Fourth Cause of Action:  Actual damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00); Punitive damages in an amount in excess of

43

Twenty-Five Thousand Dollars ($25,000.00); attorney fees, costs, interest and other relief as this Court deems just.

   5.    On his Sixth Cause of Action:   Actual damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00); Treble damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00); reasonable attorney fees, litigation costs, expenses, interest and other relief as this Court deems just.

   6.    On his Sixth Cause of Action:   Actual damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00); Punitive damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00); attorney fees, reasonable costs, litigation expenses and interest.

   7.    On his Seventh Cause of Action:   Actual damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00); Punitive damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00); attorney fees, reasonable costs, litigation expenses and interest.

   8.    On his Eighth Cause of Action:  Damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00), attorney fees, litigation expenses and interest.

                              BETRAS, KOPP & HARSHMAN, LLC

                         BY: _____
                              BRIAN P. KOPP (0064897)
                              DAVID J. BETRAS (0030575)
                              *Attorneys for Plaintiff*
                              6630 Seville Drive
                              Canfield, Ohio 44406
                              Telephone: (330) 746-8484
                              Facsimile: (330) 702-8280
                              Email: bkopp@bhlaws.com
                              dbetras@bhlaws.com

**JURY DEMAND**

Plaintiff demands a trial by jury of all issues triable by law.

_____

BRIAN P. KOPP (0064897)
DAVID J. BETRAS (0030575)
Attorneys for Plaintiff

**Instructions for Service:**

The clerk is hereby instructed to serve a copy of this Complaint upon the defendants, by certified mail, at the addresses set forth in the caption of this Complaint.

_____

BRIAN P. KOPP (0064897)
DAVID J. BETRAS (0030575)
Attorneys for Plaintiff